UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

**In Re:**

**GREDE FOUNDRIES, INC.,**　　　　　　　　　Case No. 09-14337

　　　　　**Debtor**　　　　　　　　　　　　　Chapter 11

　　　　　　　　　　　　　　　　　　　　　　Hon. Robert D. Martin

---

### MOTION FOR ORDER AUTHORIZING THE DEBTOR TO PROVIDE FINANCIAL SUPPORT TO VENDOR

---

The above-captioned debtor and debtor in possession (the "Debtor"), hereby moves the Court (the "Motion") for the entry of an order authorizing the Debtor to provide certain financial support to its vendor, Vickers Engineering, Inc. ("Vickers"). In support of this Motion, the Debtor respectfully state as follows:[1]

### Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The facts and circumstances supporting this motion are set forth in the Affidavits of Matt Tyler, President of Vickers Engineering, Inc. (the "Tyler Affidavit") (Exhibit A) and Timothy McTigue, Vice President of Bank of America, N.A., (the "Bank Affidavit") (Exhibit B) filed contemporaneously herewith.

WHD/6591051.1

**Background**

3.  On June 30, 2009 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under the Bankruptcy Code.

4.  The Debtor is continuing in possession of its property and is operating and managing its business, as a debtor in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner.

5.  Vickers is a subcontractor to the Debtor that provides machining services to iron parts cast by the Debtor in its foundries. This is an essential finishing process to complete parts that are ordered by the Debtor's customers. Most of the parts are critical to the continued operations of assembly lines at the customers. An interruption in the services provided by Vickers will have a severe effect upon the Debtor's efforts to rehabilitate and reorganize. Affected customers ("Customers") include Toyota, Honda, Borg Warner, Allison Transmission, Cummins, Bobcat, Club Car, Johnson Controls, General Motors, Chrysler and Nissan. No other vendor can timely supply the services.

6.  The machining process performed by Vickers requires custom tooling and fixtures. Replacement of the fixtures so the parts could be machined by another provider would take approximately 8 to 22 weeks depending on the parts produced for each Customer. Engineering and fixturing costs to switch to alternative service providers are estimated by Vickers at $2.12 million. Lost productions costs at the Customer are expected to be in the tens of millions of dollars.

7.  Current Customer inventory levels of the parts machined by Vickers for the Debtor range from 0 days production to 14 days production. Vickers estimates its failure to produce would shut down 21 production lines of manufacturers across the United States. This

would cause the Debtor to incur liabilities to Customers that would jeopardize the Debtor's reorganization.

8.   On the Petition Date the Debtor owed Vickers approximately $775,000 (the "Prepetition Receivables").

9.   Vickers currently has a working capital line of credit (the "Loan") from Bank of America, N.A. ("BofA") with an outstanding balance of approximately $2.1 million. Vickers' ability to draw against the line of credit is based upon a borrowing base formula, under which Vickers is allowed to draw up to 80% of its qualified accounts receivable. If the Prepetition Receivables are not paid pursuant to the ordinary business terms between Vickers and the Debtor, the Prepetition Receivables will be disqualified from Vickers' available borrowing base. Vickers has represented that this disqualification would result in (i) a breach by Vickers of various covenants under the documents evidencing the Loan, (ii) Vickers's default on its obligations under the Loan, and (iii) BofA's option to accelerate Vickers' obligations under the Loan and pursue its default remedies under the loan documents evidencing the Loan.

10.  Based upon the Debtor's bankruptcy filing, BofA has already refused to proceed with a proposed loan to Vickers of approximately $500,000, representing the final installment necessary to cover the remaining capital costs for Vickers' acquisition of an Okuma Multus B400-W, which is required for Vickers to produce parts for the Debtor customized for Borg Warner.

11.  Based upon these representations and related financial information supplied by Vickers, it appears that Vickers is extremely leveraged and its financial condition has been exacerbated by the Debtor's bankruptcy filing. BofA's Loan to Vickers is currently

WHD/6591051.1

being supervised by BofA's work-out department which is currently monitoring the status of the Debtor's bankruptcy case and Vickers' Loan due to the Debtor's bankruptcy filing.

12. BofA has demanded that the Prepetition Receivables be "made good" to avoid default under the Loan. Based on representations by Vickers President, Vickers has no source of funds to pay down BofA or otherwise cover the disqualified Prepetition Receivables.

13. Based on its representations absent some other default under the Loan, BofA will continue to finance Vickers through October 1, 2009, including the extension of credit based upon post-petition accounts receivable for Grede up to an aggregate 60-day limitation of $600,000.00 and the extension of the proposed loan for the Okuma Multus B400-W, if this Motion is approved, the Prepetition Receivables are paid pursuant to the ordinary business terms between Vickers and the Debtor and there is otherwise no material deterioration in the business of Vickers. If this Motion is approved, the Loan defaults as noted earlier will be satisfactorily addressed, but without the relief sought in this Motion, BofA may accelerate the obligations on the Loan and pursue its default remedies under the loan documents for the Loan.

14. The total amount requested for payment to Vickers is not substantial when compared to the net sales generated by the Debtor, which were approximately $550 million last year. Authority to pay the Prepetition Receivables will not create an imbalance of the Debtor's cash flows because the majority of these obligations have customary payment terms and will not be payable immediately. Cash maintained by the Debtor, together with the cash generated in the ordinary course of the Debtor's businesses, will provide more than sufficient liquidity for payment of the Prepetition Receivables according to the ordinary business terms between the parties.

15. The Debtor's other unsecured creditors will not be impaired by payment of the Prepetition Receivables.

## Summary of Requested Relief

16. The Debtor requests authority to use cash collateral and pay the Prepetition Receivables subject to Vickers and the Bank's acceptance of the following terms:

i. the Prepetition Receivables will be paid by the Debtor as they become due according to their original terms;

ii. Vickers will continue to provide machining and other services customarily supplied to the Debtor as requested by the Debtor without interruption and grant the Debtor 60 day payment terms on work performed and services provided after the Petition Date; and

iii. during the course of the Debtor's Chapter 11 proceeding the Debtor may continue to pay Vickers on 60 day terms for work performed after the Petition Date and continue to order new services.

## Grounds for the Requested Relief

17. Section 363(b) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

18. Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts, authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

19. Bankruptcy courts have the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the value of a debtor's business or assets, thereby facilitating the chapter 11 process. *See, e.g.,* <u>Miltenberger v.</u>

5

Logansport, Crawfordsville & Sw. Ry. Co., 106 U.S. 286, 311 (1882) (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership . . . ."); *see also* Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include authorizing a debtor to pay prepetition debts). As such, a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (*citing* Miltenberger, 106 U.S. at 311).

20. The viability of the doctrine of necessity (alone) as authority for the payment of prepetition claims was severely undermined by the decision of the Seventh Circuit Court of Appeals in In re Kmart Corp., 359 F.3d 866 (7th Cir. 2004). In finding that payments of prepetition obligations to so-called critical vendors could not be based solely on the doctrine of necessity, the Seventh Circuit also stated that the use of § 363(b)(1) as justification to pay prepetition claims was "promising". Id. at 872. The Seventh Circuit suggested that paying prepetition creditors may be appropriate if the other classes of creditors will do as well or better than they would do in a straight liquidation. Id. In analogizing to "cram down" analysis, the Seventh Circuit was in essence telling courts to look to the benefit or enhancement of the estate that will result from the payment of a prepetition claim. Id. at 872-73.

21. The majority of the value of Debtor's business in a § 363 sale is dependent upon its ability to continue as a going concern. It is readily apparent that the failure of Vickers will materially and adversely affect many major customers of the Debtor who, in turn, are

expected to make large postpetition claims against the Debtor and will have grounds to move their orders to other suppliers. The probable result is the failure of the Debtor's reorganization.

22. The bankruptcy court's exercise of its authority under § 105(a) is appropriate to carry out specific statutory provisions of Chapter 11, specifically §§ 363(b)(1), 1107(a) and 1108 of the Bankruptcy Code, which authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, courts have consistently held that a debtor in possession has a duty to protect and preserve the value of its assets, and prepetition claims may be paid if necessary to perform the debtor's duty. *See* In re Tusa-Expo Holdings, Inc., No. 08-45057-DML-11, 2008 WL 4857954 at*3 (Bankr. N.D. Tex. 2008) (noting the necessity of permitting the payment of prepetition employee wages and related obligations in chapter 11 bankruptcy, where employee turnover can inhibit a debtor's ability to perform its chapter 11 duties"); In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."); In re NextWave Personal Commc'ns Inc., 244 B.R. 253, 275 (Bankr. S.D.N.Y. 2000) (observing that payment of prepetition debt could be supported by the rationales of §§ 363 and 1107 of the Bankruptcy Code, "but only after notice and a hearing"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted). Accordingly, a bankruptcy court's exercise of its authority under § 105(a) and 363(b) of the Bankruptcy Code is necessary to carry out one of the central policies underlying Chapter 11—i.e., to preserve value and maximize property available to satisfy the Debtor's stakeholders.

WHD/6591051.1

23.     Recently implemented changes to the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") confirm that the Court may authorize the postpetition satisfaction of prepetition claims by reference to these standards. The power is specifically provided for in the exception contained in Bankruptcy Rule 6003(b) which provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Bankr. Rule 6003(b). This rule plainly provides that, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtor's estate, the Court may allow the Debtor to pay (prior to the twenty-first day following the Petition Date) all or part of a prepetition claim.

24.     The "immediate and irreparable harm" standard established by Bankruptcy Rule 6003(b) is essentially congruent with the "necessary and indispensable to . . . the preservation of property" standard established by the Supreme Court in Miltenberger (as described above). *See* <u>Miltenberger</u>, 106 U.S. at 311; *see also* <u>In re Frontier Airlines Holdings, Inc.</u>, No. 08-11298 (RDD) (Bankr. S.D.N.Y. Apr. 14, 2008) (finding that Debtor had satisfied the standard of Bankruptcy Rule 6003(b) where "immediate relief [was] necessary to avoid irreparable harm" and ordering that the debtor could make expenditures related to certain prepetition customer obligations). Accordingly, Bankruptcy Rule 6003(b), in addition to providing independent grounds for the authorization of payment of prepetition claims, serves to complement this line of reasoning.

25. The relief sought herein is essential to success of the Debtor's Chapter 11 case. If the Debtor does not support Vickers, the value of the Debtor's business will be substantially jeopardized.

26. In light of the foregoing, the Debtor respectfully submits that the payment of the Prepetition Receivables is essential to the success of the Debtor's Chapter 11 case, represents an exercise of the Debtor's sound business judgment and is in the best interests of the Debtor's estate and stakeholders.

### Notice

27. Notice of this Motion will be provided via electronic mail, or facsimile, to the parties or their counsel identified on the service list maintained by the noticing agent for these proceedings, Kurtzman Carson Consultants, LLC. Given the nature of the relief requested herein, Debtor submits that no other notice is necessary and asks the Court, pursuant to Fed. R. Bankr. P. 9007, to approve the same.

### No Prior Request

28. No prior Motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, for all the foregoing reasons, the Debtor respectfully request that the Court:

(a) authorize the Debtor to pay the Prepetition Receivables pursuant to the terms set forth in this Motion;

(b) Find and determine that notice of the Motion, and notice and opportunity to be heard were adequate and appropriate; and

(c) Grant such other and further relief as the Court deems appropriate.

Dated this 21st day of July, 2009.

                GREDE FOUNDRIES, INC.,
                Debtor and Debtor-in-Possession
                by its attorneys,
                Whyte Hirschboeck Dudek S.C.


By:   /s/ Daniel J. McGarry
        Daryl L. Diesing
        Jerard J. Jensen
        Daniel J. McGarry

POST OFFICE ADDRESS:
555 East Wells Street
Suite 1900
Milwaukee, WI  53202
Telephone:  (414) 273-2100
Facsimile: (414) 223-5000
Email:  ddiesing@whdlaw.com
       jjensen@whdlaw.com
       dmcgarry@whdlaw.com