IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Grede Foundries, Inc.

(Chapter 11)

Debtor.

Case No. 09-14337

MEMORANDUM DECISION

Grede Foundries, Inc. moved to enforce the 11 U.S.C. § 362 automatic stay against the Reedsburg Utility Commission and to hold the Commission in contempt. The Commission opposed the motion and filed an adversary proceeding seeking partial summary judgment on the issue of its compliance with 11 U.S.C. § 362. Grede's motion for contempt was denied after a hearing on the motion. The parties agreed that no factual disputes remain as to enforcement of the automatic stay, and I took the matter under advisement. For the following reasons, I hold that the Commission violated the automatic stay.

Grede operates foundries in six states that produce and supply metal parts to the automotive industry. Grede owns properties in Reedsburg, Wisconsin, that receive utility service from the Reedsburg Utility Commission. The Commission is a municipal utility that provides electric, water, telephone, internet, and cable television services to residential and business customers in Reedsburg, Wisconsin, and surrounding areas. Grede is the Commission's single largest electric utility customer. In 2008, approximately 35% of the Commission's revenues stemmed from its billings to Grede.

1

On June 30, 2009, Grede filed a chapter 11 petition in this district. Its pre-petition obligations to the Commission totaled just over $1.3 million. Most of those charges were incurred for electricity; a small portion was attributable to water bills, storm water charges, and sewer charges. On October 15, 2009, the Commission's general manager sent a series of notices to Grede and its attorneys. Each notice corresponded to a separate account Grede maintained with the Commission. The notices read in part:

> "Our records indicate a current balance in the amount of [$___] for the account of Grede Foundry . . . .
>
> As provided for in section 66.0809 and 66.0627 of the Wisconsin Statutes and Reedsburg City Ordinance No. 1083 Section 3.08, unpaid electric, water and sewer bills become a lien against the property if they remain uncollected after October 30, 2009.
>
> If payment for this bill . . . is not received in our office . . . by 4:00 P.M. on October 30, 2009. [*sic*]
>
> We are aware that Grede Foundry is a debtor in a currently pending Chapter 11 bankruptcy proceeding . . . This letter constitutes notice of the Reedsburg Utility Commission's right under municipal ordinance and state law to place amounts due on this account on the property tax roll. This notice does not constitute filing of a lien. This notice is provided pursuant to and in compliance with 11 U.S.C. § 362(b)(3) and 546(b)(1)(A)."

Grede did not pay off its overdue balances. On November 3, 2009, the Commission reported the delinquent utility charges to the clerk for the city of Reedsburg. On November 9, 2009, Grede filed its motion to enforce the automatic stay and hold the Commission in contempt. Grede sought to have the Commission "undo" its actions and prevent the delinquencies from becoming a lien on Grede's properties. On November 12, 2009, the city of Reedsburg reported the delinquent charges to the county.

At a hearing held on November 12, 2009, the Commission was held not to be in contempt. The court denied Grede's motion to hear the stay enforcement motion on an expedited

basis, but ordered the Commission not to take any affirmative steps to cause its delinquent charges to attach as a lien on Grede's property until the merits of the motion were decided. To comply with this order, the Commission instructed the city of Reedsburg and the county that Grede's unpaid utility charges should be omitted from its 2009 property tax bill. These charges ordinarily would have been included on Grede's property tax bill and become a lien on the property if unpaid by January 31, 2010. The Commission then commenced an adversary proceeding on December 7, 2009, seeking partial summary judgment as to its compliance with its obligations under 11 U.S.C. § 362. At no time has the Commission applied for relief from stay.

### I.

The automatic stay provisions of the Bankruptcy Code halt, *inter alia*, "any act to create, perfect, or enforce any lien against property of the estate" and "any act to collect, assess, or recover a claim." 11 U.S.C. § 362(a)(4), (6). The Commission contends as an initial matter that none of its actions constituted efforts to create or perfect a lien or to collect a debt. Instead, the Commission contends, the October 15 notices it sent simply alerted Grede to the Commission's lien rights under Wisconsin law. The Commission has not, however, explained why its reporting of the delinquent charges to the city clerk should be seen as anything other than an act to perfect a lien or collect a debt.

The Commission's actions fall under the broad sweep of 11 U.S.C. § 362(a). Under Wisconsin law, a utility can only transform its unpaid bills into a lien if it sends a delinquency notice by October 15 and reports delinquencies to the city clerk. Wisconsin Statute § 66.0809(3). The Commission took both these steps and complied precisely with the statutory

3

timing. The Commission offers no reason to believe that its actions were undertaken for any other reason than to convert its unpaid bills into a lien against Grede's properties. In addition, the Seventh Circuit has been clear that the automatic stay bars "threats of immediate action" by creditors. In re Radcliffe, 563 F.3d 627 (7th Cir. 2009). The Commission's notices contained just this sort of threat, warning Grede that its unpaid bills would become a lien if not paid by the end of the month.

II.

Even if the Commission's acts fall within the broad sweep of 11 U.S.C. § 362(a), the Commission contends that one or more provisions in 11 U.S.C. § 362(b) apply and allowed it to act without violating the stay. Specifically, the Commission contends it was entitled to send delinquency notices and report unpaid bills to the city clerk because Grede's chapter 11 petition did not stay its actions pursuant to 11 U.S.C. § 362(b)(3), (b)(9), or (b)(18). Each provision is addressed in turn.

### A. 11 U.S.C. § 362(b)(3)

The Commission first argues that it was entitled to act pursuant to 11 U.S.C. § 362(b)(3), which provides that the automatic stay does not halt

> "any act to perfect . . . an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) . . ."

This provision permits a creditor to perfect its interest if state law provides for retroactive

perfection that supersedes the rights of an intervening bona fide purchaser. 11 U.S.C. § 546(b)(1)(A). To invoke the protection of 11 U.S.C. § 362(b)(3), then, the Commission must show that its interest preceded Grede's bankruptcy filing and that Wisconsin law provided it with a right to retroactively perfect its interest.

The Commission has not done so. The Commission points to no provision in Wisconsin law that explicitly confers a right of retroactive perfection on municipal utilities. Rather, the statute that gives utilities the power to create tax liens strongly suggests that retroactive perfection is not available. Wisconsin Statute § 66.0809(3) provides that unless utility arrears are paid by November 15, "the arrears and penalty will be levied as a tax against the lot or parcel." The statute is silent on retroactivity. In contrast, Wisconsin law governing property tax levies explicitly provides for retroactive perfection:

> "When so levied such taxes are a lien upon the property against which they are charged. That lien is superior to all other liens . . . and is effective as of January 1 in the year when the taxes are levied."

Wis. Stat. § 70.01.

This interpretation accords with a decision from the Bankruptcy Court for the Eastern District of Wisconsin, decided on similar facts. U.S. Leather, Inc. v. City of Milwaukee (In re U.S. Leather), 271 B.R. 306 (Bankr. E.D. Wis. 2001). In U.S. Leather, the debtor incurred a debt for water services to the City of Milwaukee pre-petition. Post-petition, the city placed liens on the tax roll because of the unpaid utility services, pursuant to the same statute the Commission relies on, then-Wisconsin Statute § 66.069 (now renumbered to § 66.0809). Although the precise issue in U.S. Leather was slightly different—there, the trustee sought to avoid the liens—the question before the U.S. Leather court is pertinent to this case. The U.S Leather court held that

the municipal utility had no property interest until its delinquent charges were actually entered on the tax rolls.

This interpretation relied in part on the language of then-Wisconsin Statute § 66.069, which provided, in relevant part:

> "On November 16 the officer or department issuing the notice shall certify and file with the clerk a list of all lots or parcels of real estate, giving the legal description thereof, to the owners or occupants of which notice of arrears in payment were given as above specified and which arrears still remain unpaid, and stating the amount of such arrears together with the added penalty thereon as herein provided. Each such delinquent amount, including such penalty, *shall thereupon become a lien* upon the lot or parcel of real estate to which the utility service was furnished and payment for which is delinquent, and the clerk shall insert the same as a tax against such lot or parcel of real estate." (emphasis added)

The relevant Wisconsin law has admittedly been revised and renumbered since U.S. Leather was decided, but the Commission makes too much of the revisions. The relevant portion of the law now reads:

> "On November 16 the officer or department issuing the notice shall certify and file with the clerk a list of all lots or parcels of real estate, giving the legal description, for which notice of arrears was given and for which arrears remain unpaid, stating the amount of arrears and penalty. Each delinquent amount, including the penalty, *becomes a lien upon the lot or parcel of real estate* to which the utility service was furnished and payment for which is delinquent, and the clerk shall insert the delinquent amount and penalty as a tax against the lot or parcel of real estate." (emphasis added)

Reedsburg contends that the revision's omission of the word "thereupon" works a substantive change on the ruling. But this Court has specifically rejected that position. In re Delafuente, 2005 WL 3628861 (Bankr. W.D. Wis. 2005). In Delafuente, this Court adhered to the U.S. Leather holding notwithstanding the subsequent revisions to Wisconsin law, noting that the law "at that time was more specific in stating that taxes and liens on property were not effective until November 16. But, there is nothing to suggest that the changes in the language, which removed the words 'thereafter' and 'thereupon,' were intended to change the effect of the law."

Delafuente went on to hold that a municipal water utility had no property interest in a debtor's land until the charges were entered on the tax roll.

In sum, given the lack of an explicit grant of retroactive perfection under Wisconsin law, the Commission's actions cannot be excused by § 362(b)(3).

### B. 11 U.S.C. § 362(b)(9)

Section 362(b)(9) provides that the filing of a bankruptcy petition does not stay:

> "(B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;
> . . .
> (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment . . ."

The Commission contends its delinquency notice was a permissible notice of a tax deficiency or a notice and demand for a tax assessment. But Wisconsin law provides that unpaid utility bills do not become a tax until November 15:

> "The [delinquency] notice shall be in writing and shall state the amount of arrears . . . and that unless the arrears, with any added penalty, are paid by November 15, the arrears and penalty *will be levied as a tax* against the lot or parcel of real estate to which utility service was furnished and for which payment is delinquent." (emphasis supplied)

Wis. Stat. § 66.0809(3). Accordingly, when the Commission sent the delinquency notices and reported the delinquencies to the city clerk, no tax had yet been levied. Because no tax had been levied, the Commission's reliance on § 362(b)(9) is misplaced.

### C. 11 U.S.C. § 362(b)(18)

Section 362(b)(18) provides that the filing of a petition does not operate as a stay of

"the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition"

The Commission argues that it was entitled to send Grede a notice and report the delinquencies because these actions constituted creation and perfection of a statutory lien for a "special tax." The parties dispute whether the delinquent utility charges amount to a "special tax" once added to a property tax bill.

The Bankruptcy Code does not define the term "special tax," and there is no relevant case law interpreting § 362(b)(18). Persuasive authority is similarly limited, although at least one commentator suggests that the phrase "special tax" was only intended to encompass charges relating to specific projects undertaken to benefit a particular area and funded by taxes on the affected properties. Carl Jenks, "The Bankruptcy Abuse and Prevention and Consumer Protection Act of 2006: Summary of Tax Provisions," 79 Am. Bankr. L.J. 893 (Fall 2005). The Commission urges the court to adopt the Wisconsin Statutes' definition of a "special tax" as "any amount entered in the tax roll which is not a general property tax, special assessment or special charge." Wis. Stat. § 74.01(5).

But under Wisconsin law, the Commission's unpaid bills constitute a "special charge," not a "special tax." Wisconsin Statute § 74.01(5) indicates that the two terms are mutually exclusive, since a "special tax" is defined as any amount that is not a special charge. Wisconsin law defines a "special charge" as "an amount entered in the tax roll as a charge against real property to compensate for all or part of the costs to a public body of providing services to the property." Wis. Stat. § 74.01(4). On at least two occasions, Wisconsin courts have classified unpaid utility charges as a "special charge." Davis v. City of Elkhorn, 154 Wis. 2d 523 (Wis.

8

Ct. App. 1990) (delinquent utility charges were a special charge); Laskaris v. City of Wisconsin Dells, 131 Wis. 2d 525 (Wis. Ct. App. 1986) (delinquent electric bills owed to municipal utility were a special charge). Indeed the Commission's own submissions confirm this position. In its summary judgment pleadings, the Commission appends an affidavit from Anna Meister, the Reedsburg city clerk and treasurer. The affidavit states that "unpaid utility charges are placed on the property tax bill mailed by the County as a special charge." Although the distinction between a "special tax" and a "special charge" is a fine one, it is a distinction with a difference under Wisconsin law. Accordingly, § 362(b)(18) does not except the Commission's actions from the automatic stay.

### III.

Since the Commission's action fell under the sweep of the automatic stay and are not shielded by the exceptions set forth in § 362(b), there remains the question of what remedy should be awarded. Grede has not asked for damages or attorneys' fees. It has, however, asked that the Commission's actions be voided. Courts have differed on whether acts taken in violation of the automatic stay are void or merely voidable. The majority have held that such acts are void. See, e.g., In re Heghmann, 316 B.R. 395 (B.A.P. 1st Cir. 2004); In re Schwartz, 954 F.2d 569 (9th Cir. 1992); In re Askew, 312 B.R. 274 (Bankr. D.N.J. 2004); In re Benson, 293 B.R. 234 (Bankr. D. Ariz. 2003); In re Ford, 296 B.R. 537 (Bankr. N.D. Ga. 2003); but see, Bronson v. U.S., 46 F.3d 1573 (Fed. Cir. 1995) (actions were voidable). The Seventh Circuit has yet to adopt a position, but has held that "actions taken in violation of an automatic stay ordinarily are void." Eden v. Chapski, 405 F.3d 582 (7th Cir. 2005), citing Middle Tenn. News

Co. v. Charnel of Cincinnati, Inc., 250 F.3d 1077 (7th Cir. 2001). In accord with this view, the Commission's actions that violated the stay are held to be void.

Dated: December 21, 2009

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Grede Foundries, Inc.

(Chapter 11)

Debtor.

Case No. 09-14337

ORDER

The Court having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED that the Reedsburg Utility Commission's actions to perfect a lien against Grede's properties are VOIDED as violative of the automatic stay.

Dated: December 21, 2009

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE