IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Grede Foundries, Inc.

                                                                   (Chapter 11)

         Debtor.                                          Case No. 09-14337

MEMORANDUM DECISION

WE Energies and the Reedsburg Utility Commission (collectively, the "utilities") filed claims for administrative expenses under 11 U.S.C. § 503(b)(9) for the value of electricity supplied to Grede Foundries in the 90 days pre-petition. The debtor objected. The parties agree that in the 90-day period, WE Energies supplied $89,473.07 and Reedsburg supplied $394,207.52 worth of electricity. The parties disagree about whether electricity is a "good" entitled to priority under § 503(b)(9) or a service to be treated as a general unsecured claim.

I

Before reaching the merits of the argument, the state of the pleadings must be addressed. The parties agreed to forgo an evidentiary hearing after representing that they would stipulate to a set of agreed facts. In accord with this agreement, each side briefed its position. Grede then submitted a reply brief that relied primarily on an affidavit by Kevin Vesperman, who Grede evidently wishes to qualify as an expert witness on the transmission of electricity. The utilities then moved to strike the reply brief.

1

The reply brief is problematic in several ways. First, it ranges far afield from the arguments raised in the utilities' brief. Second, it arguably contravenes the parties' agreement to submit the matter on agreed facts. Third, it is far from clear that the affiant would qualify as an expert. An expert witness may only testify as to his opinion if his testimony is based on sufficient facts, is the product of reliable principles, and the witness applied those principles reliably to the case. Fed. R. Evid. 702. However, those portions of the affidavit most relevant to this decision are based on arguably insufficient and unreliable sources. The affiant repeatedly cites as the source for his knowledge a four-page printout from a website called "Wikibooks." It is improbable that experts on electricity typically rely on "Wikibooks" as a sufficient or reliable source of knowledge. Notwithstanding these deficiencies, however, I decline to grant the motion to strike, since even taking the affidavit at its face value, Grede's motion for disallowance fails.

II

The Bankruptcy Code allows for payment as an administrative priority of

> "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."

11 U.S.C. § 503(b)(9). Only "goods" are eligible for this priority treatment, not services. Although neither term is defined in the Bankruptcy Code, bankruptcy courts have almost without exception looked to the Uniform Commercial Code's definition of goods. In re Erving Industries, Inc., 2010 WL 1416148 (Bankr. D. Mass. 2010); In re Pilgrim's Pride Corp. et al., 421 B.R. 231 (Bankr. N.D. Tex. 2009); In re Goody's Family Clothing, Inc., 401 B.R. 131 (Bankr. D. Del. 2009); In re Samaritan Alliance, LLC, 2008 WL 2520107 (Bankr. E.D. Ky. 2008). The Supreme Court has previously held that where Congress uses terms that have

"accumulated settled meaning . . . under the common law" a court should infer that Congress meant to refer to that meaning when it provides no alternate definition. Dewsnup v. Timm, 502 U.S. 410 (1992). Accordingly, reference to the UCC definition is warranted.

Under the UCC, goods are "all things that are movable at the time of identification to a contract for sale." § 2-103(1)(k). The few bankruptcy courts to consider the issue have divided on whether electricity constitutes a good under this definition. See, In re Erving Industries, supra (electricity was a good); In re Pilgrim's Pride Corp.. supra (electricity not a good because it was not moveable upon identification to the contract); In re Samaritan Alliance, supra (same, because electricity was not identifiable). This case is distinct from In re Samaritan Alliance, however, in that Grede concedes that electricity is identifiable. Indeed, Grede advances at least two theories: (1) the electricity was identified to the contract when the parties formed the contract and the electricity was immovable at that time or (2) the electricity was identified when metered, but immediately became immovable upon metering. The utilities contend that electricity was identified to the contract when it was metered, and that it was movable when metered.

The UCC then provides that goods can be identified to a contract:

"At any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

> (a) when the contract is made if it is for the sale of goods already existing and identified;
>
> (b) if the contract is for the sale of future goods other than those described in paragraph (c), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers"

Here, the parties agreed that the utilities would supply Grede with electricity and that the electricity usage would be measured by a meter. They also agreed that the utilities would only bill and Grede would only be obligated to pay for what it used—i.e., what the meter recorded.

3

In other words, only the electricity that was metered was actually sold to Grede. Grede has not shown that it gained any interest in the electricity when the contract was formed. Instead, the evidence all suggests that the electricity was identified to the contract at the moment it was metered.

To be a good, the electricity the utilities supplied must also have been moveable at the time it was metered. The parties agree that the electricity was moveable when it entered the meter. Grede contends, however, that the electricity was instantaneously consumed once it was metered, and thus was no longer moveable. This argument makes little sense and is contradicted by Grede's own pleadings.

Grede contends that an electrical circuit was created when the utilities' power lines were connected to a "load" to Grede's facility (i.e., a device that required power). Only then did electrons begin to flow, each one pushing the next, thereby powering Grede's facility. The meter was installed in the middle of the circuit simply to measure the flows of electrons so that Grede could be billed appropriately. As Grede notes, electrons flow extremely rapidly through the circuit from the power source to the load. Grede characterizes the movement as "virtually instantaneous." So it isn't that Grede denies that electrons are moving from the power source to the meter to the load. Instead, it contends that the movement is so fast as to be nonexistent.

Neither the Bankruptcy Code nor the UCC require that particles move at any particular speed before they can be deemed "moveable." Admittedly, electrical flow is more difficult to conceptualize than flow of a substance such as water or natural gas. It moves both far more rapidly and at a subatomic level. This may explain why some courts have had no trouble designating natural gas and water as "goods" but characterizing electricity as a service. See, In re Pilgrim's Pride, 421 B.R. at 240. Nonetheless, there is no principled distinction to be made

between natural gas, water, or electricity. Regardless of how big the particle or how fast it moves, it is a good if moveable at the time of identification.

Grede's remaining argument, that § 546(c) implies that electricity cannot be a good, is similarly unpersuasive. This argument was properly rejected by the Erving Industries court. 2010 WL 1416148 at 13. Section 546(c) provides that a seller of goods *may* reclaim them from the debtor if certain conditions are met. This provision does not imply that goods *must* be reclaimable. In some circumstances, electricity might well be reclaimable, as when it is stored in a battery. It is also possible to envision many circumstances where items that are clearly goods could not be reclaimed, such as grain already fed to livestock or water already consumed.

The motion to strike is DENIED and the motion for disallowance is also DENIED. The § 503(b)(9) claims of WE Energies and the Reedsburg Utility Commission are hereby ALLOWED.

Dated: June 1, 2010

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Grede Foundries, Inc.

(Chapter 11)

Debtor.

Case No. 09-14337

## ORDER

The Court having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED that Grede's objection to the 11 U.S.C. § 503(b)(9) claims of WE Energies and the Reedsburg Utility Commission is DENIED.

Dated: June 1, 2010

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE