IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

In re:

Grede Foundries, Inc.

                                                                                     (Chapter 11)

               Debtor.                                              Case No. 09-14337

---

MEMORANDUM DECISION

---

Grede Foundries, Inc., moved to reject a software maintenance contract with SAP America. SAP America opposed rejection, contending that the maintenance agreement was inseparable from other, related agreements that had to be accepted or rejected *in toto*. After a hearing, I took the matter under advisement. For the reasons stated below, the motion to reject is denied.

On June 30, 2006, Grede and SAP America entered into a Software License Agreement wherein SAP granted a non-exclusive, perpetual license to use certain software and to provide training and testing as described in appendices to the License Agreement. Paragraph 11.9 of the License Agreement read as follows:

> "This Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement of the agreement between SAP and Licensee, and all previous representations, discussions, and writings are merged in, and superseded by, this Agreement. This Agreement may be modified only by a writing signed by both parties. This Agreement and each Appendix hereto shall prevail over any additional, conflicting, or inconsistent terms and conditions which may appear on any purchase order or other document furnished by [Grede] to SAP."

1

Appended to the Software License Agreement was a one-page document titled "Maintenance Schedule," which provided that Grede could request, and SAP would provide certain support services for the licensed software. The first paragraph of the Maintenance Schedule read as follows:

> "This Schedule is hereby annexed to and made a part of the Agreement specified above. In each instance in which provisions of this Schedule contradict or are inconsistent with the provisions of the Agreement, the provisions of this Schedule shall prevail and govern."

The maintenance schedule went on to provide, in paragraph six, that either party could terminate maintenance services at any time on three months' notice. In such a case, Grede would be entitled to a pro rata refund of maintenance fees paid. Paragraph six further provided that SAP America could terminate maintenance on thirty days' notice if Grede failed to pay its maintenance fees. Paragraph seven then provided that if Grede elected not to use maintenance services for some period of time, it would have to pay SAP America the accrued maintenance fees associated with that time period, plus a restatement fee.

Another document, entitled "Appendix 1" was also appended to the Software License Agreement and entered into on June 30, 2006. The Appendix licensed one specific type of software to Grede. Appendix 1 contained the annexation and incorporation provisions as the Maintenance Schedule.

The parties continued to add appendices over time. A document entitled Appendix 2 and made effective on December 1, 2006 identified an additional software application licensed to Grede. It contained the identical language about annexation and incorporation. Appendix 3 and Appendix 4 were also effective as of December 1, 2006, and each governed another supplemental software license. Both appendices contained the language about annexation and

2

incorporation. Finally, Appendix 5, effective December 21, 2007, governed another software product license and contained identical annexation and incorporation language.

In February 2010, Grede stopped using SAP's software. Although it is not using the software now and has no firm plans to do so in the future, it wants to have the option of using the software for tax preparation or preference recovery actions in the future.

Section 365(a) provides simply that a trustee "may assume or reject any executory contract." Most bankruptcy courts have interpreted this directive as requiring a debtor to assume or reject a contract in its entirety, rather than treating it in a piecemeal fashion. See, e.g., In re Atlantic Computer Sys., Inc., 173 B.R. 844 (S.D.N.Y. 1994); In re Holland Enter., Inc., 25 B.R. 301 (D.C.N.C. 1982). The Court of Appeals for the Seventh Circuit has clearly held that whether portions of a contract are severable is a matter of state law. In re United Air Lines, Inc., 453 F.3d 463 (7th Cir. 2006) ("contract severability . . . is a question of state law"). Here, both parties agree that Pennsylvania law should govern, as that state's law was dictated in the choice-of-law provisions in the contract. There is no reason to think that this court should hold differently. In United Air Lines, for example, the court simply agreed with the parties' agreement to apply the law as specified in the choice-of-law provisions. Id.

Pennsylvania law, in turn, strongly suggests that the agreement should be viewed as entire and not severable. There are two leading cases decided by the Pennsylvania Supreme Court. The first, Heilwood Fuel Co. v. Manor Real Estate Co., held that a court should first look to see whether the contractual language showed a clear intent by the parties to make the contract entire or severable. If no intent was clear, then the court would consider other "rules of construction," including the conduct of the parties and the apportionment of consideration. 175 A.2d 880 (Pa. 1961).

3

Forty years later, the Pennsylvania Supreme Court decided another case, Jacobs v. CNG Transmission Corp., 772 A.2d 445 (Pa. 2001). Jacobs reexamined, but essentially left Heilwood intact. The Jacobs court held that a court need not first determine that the parties' intent was unclear on the face of the contract before it considered other evidence bearing on intent. Nonetheless, Jacobs also ruled that where a contract expressly provides that it is to be entire, there is no need to consider extraneous evidence. ("this Court holds that, *absent express language that a contract is entire*, a court may look to the contract as a whole, including the character of the consideration, to determine the intent of the parties as to severability . . .") (emphasis added).

Under Heilwood, even after Jacobs, the contract between SAP and Grede must be deemed entire and not severable. The contract expressly states that the Software License Agreement, Maintenance Schedule, and each Appendix constitute one integrated agreement. The Software License provided that "this Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement and the agreement between SAP and [Grede]." Further, the Maintenance Schedule and each Appendix states that the document is "hereby annexed to and made a part of the Agreement specified above." This language closely follows Jacobs' requirement that a contract contain "express language that a contract is entire."

Grede argues that paragraphs six and seven of the Maintenance Schedule contradict these provisions, providing that maintenance could be terminated separately. While the schedule does allow for the cessation of maintenance services only, it still links the maintenance services to the license agreement. Should Grede opt out of or fail to pay for maintenance for any period of time, for example, it must pay all the maintenance fees that would have been due in order to reinstate the service. Further, Grede concedes that the agreement contains a cross-default provision,

4

stating that maintenance services may not be terminated if Grede still owes money to SAP America under the licensing agreement. Although the language Grede points to may cloud the water a bit, it does not obscure the contract's express language providing that the agreements are entire.

Because the language expressly incorporates the Software License Agreement, Maintenance Schedule, and Appendices into one agreement, there is no need for the court to consider extraneous evidence, as Grede urges. The motion to reject the Maintenance Schedule and retain the benefit of the remainder of the contract is hereby denied. At the hearing, Grede proposed an alternative to its motion, seeking to reject the SAP America contract *in toto* if the court denied its motion to reject just the Maintenance Schedule. Given my holding and the parties' stipulation that Grede had a valid business reason to reject the entire contract, Grede's alternative motion to reject the contract in its entirety is hereby granted.

Dated: August 20, 2010

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

In re:

Grede Foundries, Inc.

(Chapter 11)

Debtor.   Case No. 09-14337

---

ORDER

---

The court having reached the conclusions of law in the memorandum decision filed on this date, it is hereby ORDERED that Grede Foundries, Inc.'s motion to reject the Maintenance Schedule contract with SAP America is hereby DENIED. Grede's motion to reject its entire contract with SAP America is hereby GRANTED.

Dated: August 20, 2010

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE